**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| PATRICK SCHMALSTIG, | : | Case No. 3:15-cv-188 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Chief Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION[1]

### I.      Introduction

Plaintiff Patrick Schmalstig applied for Supplemental Security Income on April

25, 2011.  He asserted that he has been under a benefits-qualifying disability since

January 1, 2010.  His application, medical records, and other evidence proceeded to a

hearing before Administrative Law Judge (ALJ) Scott R. Canfield who denied Plaintiff's

application.  The parties in this case agree that a remand to the Social Security

Administration is warranted.  They disagree, however, on whether the remand should be

for an award of benefits in Plaintiff's favor or whether further administrative proceedings

are needed.  Their dispute arises in the Commissioner's Motion to Remand (Doc. #11)

and Plaintiff's Memorandum in Opposition (Doc. #12).  The undersigned has also

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

reviewed Plaintiff's Statement of Errors (Doc. #7) and the administrative record (Doc. #6).

## II.     Applicable Law

Under Sentence 4 of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009); *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  "Generally, benefits may be awarded immediately 'only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.'"  *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. App'x 852, 865 (6th Cir. 2011) (quoting, in part, *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).  "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking."  *Faucher*, 17 F.3d at 176.

## III.    Discussion

Review of the evidence of record, including Plaintiff's medical history and the medical-source opinions, reveals the presence of strong evidence that Plaintiff was under a benefits-qualifying disability.  The strong evidence includes opinions presented by Plaintiff's treating medical sources, most notably Dr. Agarwal and Dr. Carruth, and consulting physician, Dr. Payne.

Plaintiff has been under the psychiatric care of Dr. Sunita Agarwal since 2009. (Doc. #6, *PageID* #778).  Dr. Agarwal saw Plaintiff approximately every two months. *Id.* at 363-384, 511-547, 846-886.  Between December 2010 and May 2012, Dr. Agarwal diagnosed Plaintiff with Bipolar Affective Disorder, Depression, Obsessive-Compulsive Disorder, Generalized Anxiety Disorder, Schizophrenia, and Psychosis.  *Id.*  During that time, she prescribed medications for Plaintiff to take (in varying doses) not only to treat his mental ailments but also his seizure disorder.  The medications include Depakote, Lamictal, Seroquel, Wellbutrin, Ambien, Anafranil, Zoloft, Zyprexa, Ativan, and several others.  *Id.*  In April 2013, when asked whether the sum of Plaintiff's physical and mental impairments have a total disabling effect, Dr. Agarwal answered in the affirmative.  *Id.* at 779.  She explained, "[Plaintiff] becomes easily overwhelmed and paranoid…because of bipolar illness he is very emotional and has limited functional capacity." *Id.* at 780.

Plaintiff has also been under the care of Dr. Angela Carruth, a psychologist, since 2010. *Id.* at 778.  She met with Plaintiff approximately once per month in an individual therapy session to discuss his difficulties and to instill coping skills in order for him to function more normally in the community.  *Id.* at 543-562, 836-872.  She opined, "[Plaintiff] is less able to cope with pain due to his mood disorder.  His anxiety and depression tend to magnify difficulties to the point that they feel overwhelming…He is likely to shut down or exhibit impaired ability to function." *Id.* at 780.  For example, in February 2013, Dr. Carruth described one of Plaintiff's difficult weeks:

> He made some mistakes with some of his assignments.  He started magnifying the problems, being extremely self-critical, and developing unrealistic solutions to the problems which all increased his anxiety and

3

depression.  Patient is aware that this is a long-term pattern that he repeats and can verbalize how self-destructive it is to his mental and physical health.  Despite this awareness, he struggles with breaking the pattern.

*Id.* at 842.

Dr. Agarwal and Dr. Carruth are in the best position to opine on Plaintiff's mental health and disability due to the longevity and frequency of their treatment of Plaintiff. Plaintiff correctly points out in his Statement of Errors that in a joint treating source opinion, Dr. Agarwal and Dr. Carruth found that:

[Plaintiff] was specifically noted to be unable to withstand the pressure of meeting normal standards of work productivity and work accuracy without significant risk of physical or psychological decompensation; unable to sustain attention and concentration on his work to meet normal standards of work productivity and accuracy; and unable to understand, remember, and carry out simple work instructions without requiring very close supervision. (ID 782).  He was noted to be unable to behave in an emotionally stable manner; relate predictably in social situations; maintain concentration and attention for two-hour segments; perform activities within a schedule; maintain regular attendance and punctuality; or complete a normal workday and work week without interruption from psychologically based symptoms. (ID 783-784).  [Plaintiff] was noted to exhibit marked deficiencies of concentration, persistence, or pace, which would result in a failure to complete tasks in a timely manner.

(Doc. #7, *PageID* #s 1013-1014) (citing Doc. #6, *PageID* #s 782-787).

Plaintiff also attended an adult group therapy session twice per week where he was able to interact with others in a safe environment and work through his issues within a small group setting.  (Doc. #6, *PageID* #s 839-890).  However, despite this supportive care, Plaintiff was hospitalized for suicidal intentions on at least four separate occasions between January 2010 and June 2011.  *Id.* at 160.  During each instance he was admitted

4

for one week and put under observation, his medications were reviewed and re-dosed, and he participated in intense mandatory psychotherapy. *Id.*

During his administrative hearing, Plaintiff testified that he experiences panic attacks three to four times per week, causing him to experience tunnel vision, a loss of awareness of his senses, and a loss of cognitive and logical thinking. *Id.* at 116. In order to combat these attacks, Plaintiff stated that he uses the prescription drug Ativan approximately two to three times per week, and it can take up to a full day to recover from a panic attack. *Id.* at 117, 141. Plaintiff testified that because of such attacks and the requisite recovery period, he missed ten days of school in one semester. *Id.* at 141. He indicated that he still suffers from schizophrenia as well as suicidal thoughts – as many as four episodes in the past six months. *Id.* at 133. Plaintiff also referred to "hav[ing] cycles" associated with his diagnosis of Bipolar Disorder and explained that the cycles happen randomly and can result in debilitating depression. *Id.* at 112.

Dr. Ty Payne also conducted a one-time clinical examination of Plaintiff. *Id.* at 499-509. Dr. Payne noted, "A pattern is that he gets anxious, gets into an OCD (Obsessive-Compulsive Disorder) spiral, and then becomes more anxious and possibly guilty for not doing 'as he should.'" *Id.* at 504. Dr. Payne makes mention of a rubber band Plaintiff wore on his arm to administer self-punishment throughout the day if he should fail his own expectations. *Id.* at 502. In his final assessment of Plaintiff's functional abilities, Dr. Payne stated, "[Plaintiff] will likely no [sic] do well in following through due to impulsivity, thought disorder, and anxiety." *Id.* at 507. He explained that his "OCD characteristics will interfere with his ability to maintain concentration" and that

5

he becomes more anxious and may have panic attacks under stress, even to the point of decompensation. *Id.*

In June 2012, Dr. David Dietz, a consulting state agency psychologist, reviewed Plaintiff's record as to his mental residual functional capability. *Id.* at 170-183. Notably, Dr. Dietz completed his review prior to Dr. Agarwal and Dr. Carruth's opinion from April 2013. *Id.* at 181, 778-787. Dr. Dietz concluded that Plaintiff was "moderately limited" in his ability to interact appropriately with others and that Plaintiff can do so on an "occasional and superficial level." *Id.* at 180. Dr. Dietz believed that Plaintiff was able to independently carry out three to four step tasks in an environment where change is "infrequent." *Id.* at 181. Dr. Dietz reached different conclusions than both treating physicians and the consulting physician.

The Commissioner is correct to rely upon evidence in the record that tends to be contrary to the conclusion that Plaintiff was under a disability, namely the opinion of the consulting state agency psychologist. However, upon review of the record as a whole, and given that Dr. Dietz did not have the benefit of the opinions provided by Plaintiff's treating physicians, Dr. Dietz's opinion is minimally probative. This is especially true when compared to Plaintiff's treating doctors' opinions and extensive treatment notes and the objective medical evidence presented which supports their opinions.

In light of the fact that Plaintiff filed for disability over five years ago, and in light of the strong evidence of record while contrary evidence is lacking, there is no just reason to further delay this matter by requiring additional administrative proceedings. *See*

*Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

Accordingly, a reversal of the ALJ's decision and a judicial award of benefits are warranted.

### IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's Motion to Remand (Doc. #9) be GRANTED, in part, as to the requested remand to the Social Security Administration, and DENIED, in part, as to the request for further administrative proceedings;

2.      The Commissioner's non-disability finding be reversed;

3.      This matter be remanded to the Social Security Administration under Sentence 4 of 42 U.S.C. §405(g) for payment of benefits regarding Plaintiff Patrick Schmalstig's application protectively filed on April 25, 2011 and benefits be awarded to Schmalstig consistent with the Social Security Act; and

4.      The case be terminated on the docket of this Court.

Date:  May 13, 2016                          *s/Sharon L. Ovington*
                                             Sharon L. Ovington
                                             Chief United States Magistrate Judge

7

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).

8